IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MIKE ZAK and <br> HOWETOWN MAGAZINE, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF ARAB and <br> ARAB CHAMBER OF COMMERCE, <br> et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. 4:15-cv-00232-JEO <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

In this action, Plaintiffs Mike Zak and Hometown Magazine allege that the City of Arab, Alabama (the "City"), relying on information provided by the Arab Chamber of Commerce (the "Chamber"), published defamatory statements about Plaintiffs on the City's Facebook page. (Doc. 9).[1] In their second amended complaint, Plaintiffs have asserted state law claims against both the City and the Chamber and claims under 42 U.S.C. § 1983 against the City only. The case has been assigned to the undersigned United States Magistrate Judge pursuant to the court's general order of reference dated January 2, 2015. The parties have consented to an exercise of plenary jurisdiction by the magistrate judge under 28

---

[1] References herein to "Doc. ___" are to the document numbers assigned by the Clerk of the Court.

U.S.C. § 636(b)(1) and Fed. R. Civ. P. 73.

Before the court are three motions to dismiss filed by the City (docs. 1-14, 3 & 12) and a motion to dismiss filed by the Chamber (doc. 1-17). Because the City's first two motions precede the second amended complaint, the court will address the third motion to dismiss (doc. 12), which adopts the arguments in the City's second motion to dismiss and the accompanying brief (docs. 3 & 4).[2] Upon consideration, the court concludes that the City's motion is due to be granted as it relates to Plaintiffs' federal law claims. The court declines to exercise supplemental jurisdiction over the remaining state law claims and will remand such claims to state court.

## I. REVIEW STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss all or some of the claims in a complaint on the ground that its allegations fail to state a claim upon which relief can be granted. However, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon

---

[2] Because the filing of an amended complaint supersedes the original complaint, motions directed at the superseded pleading generally are deemed moot. *See New York Life Ins. Co.*, 57 F. Supp. 2d 1401, 1409 (M.D. Ga. 2014).

which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). On a Rule 12(b)(6) motion, the plaintiff must plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). While specific facts are not necessary, a plaintiff's complaint must provide the defendant with "fair notice." *Id.*

The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor is it proper to assume that the plaintiff can prove facts it has not alleged or that the defendants have violated the law in ways that have not been stated. *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . .." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' " that is, its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

## II.   BACKGROUND

### A.   Procedural History

Plaintiffs initiated this action in the Circuit Court of Cullman County, Alabama on August 22, 2014, with the filing of a complaint against the City and the Chamber (and certain fictitious parties) alleging only state law claims. (Doc. 1-6). The City moved to dismiss the complaint and transfer venue to Marshall County, Alabama. (Doc. 1-14). The Chamber joined in the City's motion. (Doc. 1-17). While the motion was pending, Plaintiffs filed an amended complaint adding federal claims under 42 U.S.C. § 1983 against the City. (Doc. 1-1). The case was then transferred by the Circuit Court of Cullman County to the Circuit

Court of Marshal County. (Doc. 1-22).

The case was removed to this court on February 9, 2015. (Doc. 1). The City then filed a second motion to dismiss directed to the claims in the amended complaint. (Doc. 3). Within one hour of the filing of the City's second motion to dismiss, Plaintiffs filed a second amended complaint adding new factual allegations. (Doc. 9). The City then filed a third motion to dismiss directed to the second amended complaint. (Doc. 12). All of the matters have been fully briefed and are ripe for decision.

### B. Substantive Claims

Zak is a resident of Alabama. (Compl. at ¶ 1).[3] Hometown Magazine is a sole proprietorship operated by Zak. (*Id*. at ¶ 9). Through Hometown Magazine, Zak ran a coupon distribution business. (*Id*. at ¶ 2). On or about October 11, 2013, Zak obtained a valid business license for Hometown Magazine from the City. (*Id*. at ¶ 8).

On or around November 13, 2013, the City posted on its Facebook account a publication concerning Zak and Hometown Magazine. (¶ 10). The publication read as follows:

---

[3] Citations herein to "Compl. at ¶ __" are to the paragraphs of the second amended complaint. (Doc. 9). Consistent with the standard of review, the allegations in the second amended complaint are assumed to be true for instant purposes. However, they may not be the actual facts.

> There are 2 men going around Arab purporting to represent Hometown Values Coupon Magazine.  Their names are Dion Hahn and Mike Zak; they are leaving behind this magazine telling merchants this is what they are getting.  In fact they are not in anyway affiliated with Hometown Values.  They have been delivered cease and desist orders due to copyright and trademark infringements.  They are also telling people the method of distribution is direct mail when in fact it was distributed via The Arab Tribune.  These people do not hold business licenses and should be reported to the appropriate authorities.

(*Id*. at ¶ 11).  Hahn responded to the City's posting on Facebook as an employee of Hometown Magazine.  (*Id*. at ¶ 12).  He informed the City that the publication's information was incorrect and needed to be removed immediately.  (*Id*.)

According to Zak, after being notified of the falsity of the publication, the City failed or refused to remove it and responded by saying: "We received this information through a mass email sent from the Arab Chamber of Commerce, which has always been very reliable.  Please direct further inquiries to them."  (*Id*. at ¶ 13).  Zak states that soon after he received this response, he began receiving emails and phone calls from customers seeking information about Hometown Magazine's integrity and the validity of the City's publication.  (*Id*. at ¶ 14).  One instance occurred on Sunday, November 17, 2013, when an individual emailed Zak the following questions: "So what's the story? Are you just scamming people? Are the coupons in the magazine valid?"  (*Id*.)  At some point after November 17,

2013, Zak closed Hometown Magazine as a consequence of Defendants' actions. (*Id*. at ¶ 21).

Plaintiffs' claims are set forth in five counts. In Count I, Plaintiffs allege that Defendants, "without any consideration of its [the publication's] validity, recklessly, intentionally and purposefully published false and injurious information about [ ] Plaintiffs." (*Id.* at ¶¶ 23). Plaintiffs further assert that Defendants' "libelous and slanderous statements" caused Plaintiffs to suffer "public contempt, hence disconnecting them from the public's trust and moreover the collective socio-economic discourse" thereby leading to the closing of their business. (*Id*. at ¶¶ 24-25).

In Count II, Plaintiffs assert that Defendants' "owed a duty to Plaintiffs" and "breached their duty to Plaintiffs when they disseminated fallacious information that blackened Plaintiffs' reputation." (*Id*. at ¶¶ 28-29). Plaintiffs further claim in Count II that Defendants' negligence is the "proximate cause of Plaintiffs' damages." (*Id*. at ¶ 32).

In Count III, Plaintiffs allege wantonness/gross negligence when Defendants, "acting with complete indifference to the possible injurious consequences, willfully and recklessly disseminated unverified information about [ ] Plaintiffs." (*Id*. at ¶ 35). Plaintiffs further claim in Count III that when

7

Defendants "were made aware of the untruthful nature of the information disseminated," they "failed or refused to remove the defamatory content from the social media post." (*Id*. at ¶ 36).

In Count IV, Plaintiffs bring claims against the City for violation of Plaintiffs' "Fourth (4th) and Fourteenth (14th) amendment rights" as guaranteed by the Constitution of the United States of America and 42 U.S.C. § 1983. (*Id*. at ¶¶ 50- 51).

Finally, in Count V, Plaintiffs maintain that the City is liable under § 1983 for failing to adequately train and supervise certain unidentified employees. Plaintiffs contend that the City was "aware" that unidentified employees "lacked the competence or regard necessary to perform their respective duties within the constitutional parameters as required by law" and that "such disregard would result in injury or damage." (*Id.* at ¶ 65).

### III. DISCUSSION

#### A. 42 U.S.C. § 1983 Claim

##### 1. Legal Standard

Plaintiffs' federal law claims in Counts IV and V are brought pursuant to § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,

> custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

42 U.S.C. § 1983. Section 1983 thus creates a remedy for violations of federal rights committed by persons acting under color of state law. For a plaintiff to prevail on a § 1983 claim against a municipality two elements must be alleged and proved. First, a plaintiff must show a deprivation of constitutional or federal statutory rights. *Bd. of County. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Second, a plaintiff must identify the local government policy or custom that caused the deprivation of federal rights. *Id.*; *see also McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (stating similar elements necessary to bring action against a municipality under a § 1983 claim).

### 2. Fourth Amendment Claim under § 1983

In Count IV, Plaintiffs allege that the City violated their constitutional rights under the Fourth (and the Fourteenth) Amendment. The Fourth Amendment, however, protects against unreasonable searches and seizures by government officials. None of Plaintiffs' allegations concern a "search" or a "seizure" by City officials. Therefore, to the extent that Plaintiffs seek to recover under § 1983 for a

Fourth Amendment violation, their claims are due to be dismissed.

### 3. Fourteenth Amendment Claim under § 1983

Plaintiffs complain that their Fourteenth Amendment rights were violated via injury to their reputation due to the publishing of the material on the City's Facebook account concerning the validity of their business license and the integrity of their business. However, "the Fourteenth Amendment's Due Process Clause [does not] extend ... a right to be free of injury where the State may be characterized as the tortfeasor. ... [S]uch a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701 (1976). The Supreme Court has held that "mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest [for purposes of the Due Process Clause]." *Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1, 6-7 (2003) (citing *Paul*, *supra*); *see also Siegert v. Gilley*, 500 U.S. 226, 233 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation.").

The Eleventh Circuit Court of Appeals, relying upon *Siegert*, has held that "damages to a plaintiff's reputation are only recoverable in a section 1983 action if those damages were incurred as a result of government action significantly

altering the plaintiff's constitutionally recognized legal rights." *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1438 (11th Cir. 1998). The Supreme Court has established "what has come to be known as the 'stigma-plus' test," which is to be applied in assessing Fourteenth Amendment Due Process claims. *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001). The "stigma-plus" test requires that "a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." *Behrens v. Regier*, 422 F.3d 1255, 1260 (11th Cir. 2005) (citing *Cannon*, 250 F.3d at 1302). In considering what satisfies the "plus" prong of this analysis, the Eleventh Circuit has stated that a "state action had [to have] significantly altered or extinguished 'a right or status previously recognized by state law.' " *Id.* (quoting *Paul*, 424 U.S. at 711).

    Here, Plaintiffs' claim is that loss of business reputation that leads to the loss of business opportunity and the actual loss of the business itself sufficiently qualifies as constitutionally protected property and liberty interests. In support of their contention, Plaintiffs rely heavily upon the line of cases starting with *Marrero v. City of Hialeah,* in which the former Fifth Circuit Court of Appeals recognized that injury to business reputation was a liberty interest protectable

**11**

under the scope of § 1983. *See Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir. 1980)[4]; *see also Espanola Way Corp. v. Meyerson*, 690 F.2d 827 (11th Cir. 1982); *Economic Dev. Corp. of Dade County v. Stierheim*, 872 F.2d 952 (11th Cir. 1986); *Little v. City of N. Miami*, 805 F.2d 962 (11th Cir. 1986).

However, the Eleventh Circuit retreated from this line of cases in *Cypress*. There, an insurance company brought a claim under § 1983, alleging that defamatory statements made by the Chief of Staff of the Florida Department of Insurance led to the loss of the company's only client in Florida. *Cypress*, 144 F.3d at 1436. The *Cypress* court recognized the confusion created by *Marrero* and its progeny and the court's holding in *Von Stein v. Brescher*, 904 F.2d 572 (11th Cir. 1990):

> [W]e do not think the law of this Circuit has established that defamation occurring other than in the course of dismissal from a job or in the termination or significant alteration of some other legal right or status will suffice to constitute a deprivation sufficient to state a claim under section 1983.

*Cypress*, 144 F.3d at 1437 (quotation omitted). The court then cited the Supreme Court's holding in *Siegert*:

> In *Siegert* ..., the Court held that a psychologist who had lost his job

---

[4]Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

at an army hospital due to an allegedly defamatory letter written by the psychologist's previous supervisor at another government hospital could not allege the deprivation of a constitutionally protected right. Indeed, the Court specifically rejected the notion that defamation by a government actor that causes injury to professional reputation violates procedural due process.

*Cypress*, 144 F.3d at 1437 (citing *Siegert*, 500 U.S. at 233-34). The *Cypress* court further noted that in *Siegert*, the Supreme Court suggested that

> although injury to business reputation may be relevant to damages in a section 1983 action, these damages would only be available in a case involving the deprivation of a more tangible liberty or property right:
>
>> The statements contained in the [defamatory] letter would undoubtedly damage the reputation of one in his position, and impair his future employment prospects. But the plaintiff in *Paul v. Davis* similarly alleged serious impairment of his future employment opportunities as well as other harm. Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action.

*Cypress*, 144 F.3d at 1437-38 (quoting *Siegert*, 500 U.S. at 234). The *Cypress* court concluded, "The Supreme Court's message in *Siegert* is clear and unmistakable: Section 1983 did not make every tort committed by a state official a violation of constitutional rights." *Cypress*, 144 F.3d at 1438. "[D]amages to a

plaintiff's business reputation are only recoverable in a section 1983 action if those damages were incurred as a result of government action significantly altering the plaintiff's constitutionally recognized legal rights." *Id*. Affirming the lower court's dismissal of the insurance company's § 1983 complaint for failure to state a claim, the court stated, "Cypress has alleged no government action other than false statements made by [a government actor]. This may well be a tort, but it is not a violation of the right to due process of law." *Id*.

The instant case mirrors *Cypress*. Hometown Magazine and Zak allege damages to their reputation due to defamatory comments on a government website. As in *Cypress*, Plaintiffs allege lost business reputation, future prospects, and actual business. While such damages may be recoverable under state law, they are not recoverable under § 1983 unless the "damages were incurred as a result of government action significantly altering the plaintiff[s'] constitutionally recognized legal rights." *Id.* at 1438. Since Plaintiffs' allegations are premised on no governmental action other than the making of false statements on the City's Facebook page, it is clear that the allegations do not meet the "stigma plus" requirements. Thus, Plaintiffs have failed to state a Fourteenth Amendment claim under § 1983. Because they have failed to show a redressable underlying constitutional violation, their federal law claims in Counts IV and V are due to be

dismissed.  *See also Baltimore Air Transport, Inc. v. Jackson*, 419 F. App'x 932, 936-37 (11th Cir. Mar. 28, 2011) (noting that "the questioning of an aircraft's airworthiness does not violate the Constitution")[5]; *Schulze v. Broward Cnty Bd. of Cnty Comm'rs*, 190 F. App'x 772 (11th Cir. July 12, 2006) (holding that daycare owners' allegations that county's inspection, regulation, and public reporting actions concerning their facility injured their business reputation, including their property interest in goodwill, did not in themselves support a § 1983 due process challenge).

To the extent Plaintiffs rely on *Little* for the proposition that because they allege "injury to business reputation/goodwill interests in addition to injury to personal reputation, the averments satisfy the 'stigma plus' requirement," the court is not impressed.  (Doc. 8 at 5 (quoting *Little*, 805 F.2d at 969)).  *Little* was disavowed by the Eleventh Circuit in *Cypress*.  *See Cypress*, 144 F.3d at 1437.  Plaintiffs also assert that the City "mischaracterizes the damage of Plaintiffs as only 'damage to reputation, and financial damages due to damaged reputation,' " while failing "to take note of [their] 'ruined business.' " (Doc. 8 at 6).  However, the court again must find that under *Cypress* this is not enough.  Any damages to

---

[5]Unpublished opinions of the Eleventh Circuit Court of Appeals are not binding precedent, but are deemed persuasive authority.  Eleventh Circuit Rule. 36-2.

Plaintiffs' business flow directly from the alleged injury caused by Defendants to Plaintiffs' business reputation. *See Cypress*, 144 F.3d 1437 (citing *Siegert*, 500 U.S. at 234). Thus, while the damages may be recoverable under state tort law, they are not recoverable as federal claims in this action without some showing of additional governmental action. *Cypress*, 144 F. 3d at 1437-38; *see also Univ. Gardens Apartments Joint Venture v. Johnson*, 419 F. Supp. 2d 733, 741 (D. Md. 2006) ("Plaintiffs allege no facts that would indicate that Defendants directly interfered with Plaintiffs' leases, property values, or creditor relationships. For these reasons, Plaintiffs have failed to state a § 1983 stigma-plus claim."); *Sullivan v. State of N.J., Div. of Gaming Enforcement*, 602 F. Supp. 1216, 1223 (D.N.J. 1985) (stating that "[i]f plaintiff only has to show that the state defamed him – and not that the state did something else as well – in order to state a claim for deprivation of liberty under § 1983, the effect would be to transmute all defamation actions against state actors in which plaintiff can show some harm resulting from the defamation into § 1983 actions").[6]

### B. State Law Claims

In Counts I, II, and III of the second amended complaint, Plaintiffs allege

---

[6] In view of the court's determination of this issue, any further discussion of the City's § 1983 defenses is pretermitted.

that Defendants are liable for defamation of character (Count I), negligence (Count II), and wantonness/gross negligence (Count III). Because all the federal claims in this case are due to be dismissed, the court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, under 28 U.S.C. § 1441(c)(2), those claims are due to be remanded to state court. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001).

## IV. CONCLUSION

Based on the foregoing, the court finds that the initial motions to dismiss filed by the City (docs. 1-14 & 3) are **MOOT** and the last motion to dismiss (doc. 12) is due to be **GRANTED** on the federal law claims in Counts IV and V of the second amended complaint. The remaining state law claims against the City and the Chamber are due to be **REMANDED** to the Circuit Court of Marshall County, Alabama for further proceedings.

**DONE**, this the 24th day of July, 2015.

_John E. Ott_
**JOHN E. OTT**
Chief United States Magistrate Judge